**ORIGINAL**

# In the United States Court of Federal Claims

No. 13-307C

Filed: November 30, 2016

**FILED**

**NOV 30 2016**

**U.S. COURT OF FEDERAL CLAIMS**

```
*****************************
*
LARRY GOLDEN,              *    28 U.S.C. § 1498(a) (Patent Infringement);
                           *    35 U.S.C. § 251 (Reissue); RCFC 12(b)(1)
    Plaintiff, pro se,     *       (Jurisdiction);
                           *    RCFC 12(b)(6) (Failure to State a Claim);
v.                         *    RCFC 12(e) (More Definite Statement);
                           *    RCFC 15(a)(2) (Amended Complaint,
THE UNITED STATES,         *       With Court's Leave);
                           *    Manual of Patent Examining Procedure
    Defendant.             *       (9th ed. 2015).
                           *
*****************************
```

**Larry Golden**, Greenville, South Carolina, *pro se*.

**Lindsay Kate Eastman**, United States Department of Justice, Civil Division, Washington, D.C.

### MEMORANDUM OPINION AND ORDER DENYING THE GOVERNMENT'S MOTION TO DISMISS

BRADEN, *Judge*.

## I. RELEVANT FACTUAL BACKGROUND.[1]

On April 5, 2006, Mr. Larry Golden filed Patent Application No. 11/397,118 ("the '118 Application"), titled "Multi Sensor Detection, Stall To Stop And Lock Disabling System," with the United States Patent and Trademark Office ("USPTO"). 2/12/16 Am. Compl. Ex. B. On June 10, 2008, the '118 Application resulted in the issuance of U.S. Patent No. 7,385,497 ("the '497 Patent"). 2/12/16 Am. Compl. Ex. B.

Several days prior, on June 6, 2008, Mr. Golden filed a continuation-in-part application,[2] No. 12/155,573 ("the '573 Application"), of the '118 Application. 2/12/16 Am. Compl. Ex. C.

---

[1] The facts discussed herein are derived from the May 1, 2013 Complaint ("Compl."); and the February 12, 2016 Amended Complaint ("2/12/16 Am. Compl.") and attached Exhibits A–K ("2/12/16 Am. Compl. Ex. A–K").

[2] "A continuation-in-part is an application filed during the lifetime of an earlier nonprovisional application, repeating some substantial portion or all of the earlier nonprovisional

On December 22, 2009, the '573 Application resulted in the issuance of U.S. Patent No. 7,636,033 ("the '033 Patent"). 2/12/16 Am. Compl. Ex. C.

On January 20, 2010, Mr. Golden filed a continuation application, Application No. 12/657,356 ("the '356 Application"), of the '573 Application. Thereafter, Mr. Golden filed several continuation applications of the '356 Application, resulting in:

- U.S. Patent No. 8,106,752 ("the '752 Patent"), issued on January 31, 2012;
- U.S. Patent No. 8,334,761 ("the '761 Patent"), issued on December 18, 2012;
- U.S. Patent No. 8,531,280 ("the '280 Patent"), issued on September 10, 2013;
- U.S. Patent No. 9,096,189 ("the '189 Patent"), issued on August 4, 2015; and
- Published Patent Application No. 2016-0027273 A1 ("the '273 PG-PUB").

2/12/16 Am. Compl. Exs. D, E, F, I.

On March 31, 2011, Mr. Golden filed a reissue application for the '033 Patent that, on January 1, 2013, issued as U.S. Reissue Patent No. RE43,891 ("the '891 Patent").[3] 2/12/16 Am. Compl. Ex. G.

On September 9, 2011, Mr. Golden filed a second reissue application for the '033 Patent. On February 12, 2013, the application resulted in the issuance of U.S. Reissue Patent No. RE43,990 ("the '990 Patent"). 2/12/16 Am. Compl. Exs. G, H.

The patents listed above disclose inventions for the detection and automated isolation of dangerous chemical, biological, and radiological agents in shipping containers, tractor trailers, mail carriers, mail boxes and lockers. *See, e.g.*, 2/12/16 Am. Compl. Ex. B at 2. Mr. Golden is the owner, and sole inventor, of these patents. 2/12/16 Am. Compl. Exs. A–I.

---

application and adding matter not disclosed in the said earlier nonprovisional application." Manual of Patent Examining Procedure ("MPEP") §201.8 (9th ed. 2015).

[3] Under 35 U.S.C. § 251, defective patents may be corrected through a process known as "reissue." Section 251(a) provides:

> [w]henever any patent is, through error, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.

35 U.S.C. § 251(a).

## II. PROCEDURAL HISTORY.

On May 1, 2013, Mr. Golden ("Plaintiff") filed a Complaint in the United States Court of Federal Claims alleging that the Government infringed the '990 Patent, based on three solicitations published by the United States Department of Homeland Security ("DHS") seeking to develop technology for sensing biological and chemical substances. Compl. at 1–2. The Complaint alleges that the DHS solicitations directly infringed, infringed under the doctrine of equivalents, or infringed by inducement claims 11, 74 and 81 of the '990 Patent. Compl. at 3.

On August 15, 2013, Plaintiff filed a "Notice of Supplement" that the court considers an Amended Complaint. ECF No. 6.

On September 5, 2013, the Government filed a Motion For A More Definite Statement, pursuant to Rule of the United States Court of Federal Claims ("RCFC") 12(e), requesting that Plaintiff further amend the May 1, 2013 Complaint to incorporate numbered paragraphs, enumerate with particularity the Government devices or processes that allegedly infringe Plaintiff's patents, and identify the party in interest. ECF No. 9.

On September 20, 2013, Plaintiff filed: a Motion To Strike (ECF No. 10); a Motion To Amend Complaint (ECF No. 11); a Motion To Supplement Complaint (ECF No. 14); a Response to the September 5, 2013 Motion For A More Definite Statement (ECF No. 12); and a Motion For Summary Judgment (ECF No. 13).

On October 15, 2013, Plaintiff filed a second Response to the September 5, 2013 Motion For A More Definite Statement that the court considers a Second Amended Complaint. The October 15, 2013 Second Amended Complaint advised the court that Plaintiff is representing himself, not the company ATPG Technology. ECF No. 20.

On October 21, 2013, the court granted the September 10, 2013 Motion For A More Definite Statement, because the May 1, 2013 Complaint, the August 15, 2013 Amended Complaint, and the October 15, 2013 Second Amended Complaint were so vague and ambiguous that the Government could not prepare an informed Answer. ECF No. 21. That same day, the Government filed a Response To Plaintiff's Motion For Summary Judgment. ECF No. 22.

On November 22, 2013, Plaintiff filed a More Definite Statement. ECF No. 24.

On December 20, 2013, the court denied Plaintiff's September 20, 2013 Motion For Summary Judgment, without prejudice, because the Government had not filed an Answer. ECF No. 28.

On December 30, 2013, Plaintiff filed a Motion To Amend And Supplement Pleadings Of The More Definite Statement, pursuant to RCFC 15(a)(2). ECF No. 29.

On January 10, 2014, the Government filed an Answer to the December 30, 2013 Motion To Amend Pleadings. ECF No. 30. The Government treated the December 30, 2013 Motion To Amend Pleadings as filed by leave of court and, therefore, superseding Plaintiff's November 22, 2013 More Definite Statement. ECF No. 30 at n.1.

3

On February 7, 2014, the court granted the December 30, 2013 Motion to Amend Pleadings and ordered the parties to treat that motion as a Third Amended Complaint, superseding all prior complaints submitted by Plaintiff. ECF No. 32.

On April 30, 2014, DHS filed a petition for *inter partes review* ("IPR") of the '990 Patent before the USPTO Patent Trial and Appeal Board ("PTAB").

On May 28, 2014, Mr. Ha Kung Wong informed the court that he was counsel of record for Plaintiff (ECF No. 42) but, on September 12, 2014, he withdrew (ECF Nos. 49, 50).

On October 8, 2014, the PTAB filed a Decision To Institute IPR of claims 11, 74, and 81 of the '990 Patent. *See Department of Homeland Security v. Golden*, IPR2014-00714, 2014 WL 6999625, at *1 (P.T.A.B. Oct. 8, 2014). With the exception of a sixty-day stay for Plaintiff to seek legal representation, the court did not stay this case while PTAB proceedings were ongoing. The court, however, did not take any substantive action during those proceedings.

\* \* \*

On October 1, 2015, the PTAB issued a final decision "grant[ing] Patent Owner's Motion to Amend . . . claims 11, 74, and 81 of the '990 Patent, and den[ying] the Motion to Amend . . . claims 154–156." *See Department of Homeland Security v. Golden*, IPR2014-00714, 2015 WL 5818910, at *17 (P.T.A.B. Oct. 1, 2015). On November 17, 2015, the PTAB denied Plaintiff's request for rehearing. *See Department of Homeland Security v. Golden*, IPR2014-00714, 2015 WL 10381775 (P.T.A.B. Nov. 17, 2015).

On December 22, 2015, the court convened a telephone status conference to discuss how the case should proceed in light of the PTAB's final decision. On December 23, 2015, the court granted Plaintiff leave to file another amended complaint. ECF No. 65.

On February 12, 2016, Plaintiff filed a Fourth Amended Complaint ("2/12/16 Am. Compl.") alleging that, the Government: (1) was liable for the infringement of Plaintiff's '497, '752, '891, '990, and '189 Patents under 28 U.S.C § 1498(a); and (2) violated the Fifth Amendment of the United States Constitution by taking Plaintiff's '497, '033, '752, '761, '280, '891, '990, '189 Patents and related '273 Application, without just compensation. 2/12/16 Am. Compl. at ¶¶ 68–127.

The February 12, 2016 Amended Complaint identifies over thirty devices that were developed or procured, as a result of Government solicitations, Government contracts, or National Science Foundation ("NSF") grants.[4] 2/12/16 Am. Compl. at ¶¶ 68–127. These devices allegedly

---

[4] The relevant devices are: M-Lock; High-Power Electromagnetic System ("HPEMS"); Smartphone Microscope; Biophone; Smartphone Biosensor Cradle; iPhone Biodetector Smartphone; Pathtracker; the Center of Integrated Nanomechanical Systems ("COINS") Nano-Embedded Sensors; Smartphone-Based Rapid Diagnostic Tests; Lockheed Martin K-Max Unmanned Self-flying Helicopter; Boeing MH-6 Little Bird Helicopter; SIN-VAPOR I Smartphone System; Samsung Galaxy s6 Microscope Smartphone; VOCket System; Nett Warrior Smartphone System; Northrop Grumman X-47B UCAS I X-47B Control Display Unit; GammaPix; NFC Samsung Galaxy s6 Smartphone Sensor; Cell-All Synkera MikroKera Ultra;

infringe claims in Plaintiff's '497, '752, '891, '990, and '189 Patents. 2/12/16 Am. Compl. at ¶¶ 68–127.

On April 8, 2016, the Government filed an Answer to the February 12, 2016 Amended Complaint. ECF No. 74.

On June 3, 2016, Plaintiff filed a Motion For Summary Judgment [On] Validity and, on June 8, 2016, Plaintiff filed a Motion For Entry Of Estimated Damages And Accounting Report.

On June 10, 2016 the court convened a telephone status conference. On June 13, 2016, based on the arguments raised during the status conference, the court ordered that the Government file a Motion To Dismiss, and stayed the June 3, 2016 Motion For Summary Judgment and June 8, 2016 Motion For Entry Of Estimated Damages And Accounting Report. ECF No. 85.

On June 24, 2016, the Government filed a Motion To Dismiss Certain Accused Devices ("Gov't Mot."). On July 5, 2016 Plaintiff filed a Response ("Pl. Resp."). On July 18, 2016, the Government filed a Reply ("Gov't Reply").

### III. STANDARD OF REVIEW.

#### A. Standing.

Federal trial courts have been advised to "decide standing questions at the outset of a case. That order of decision (first jurisdiction then the merits) helps better to restrict the use of the federal courts to those adversarial disputes that Article III defines as the federal judiciary's business." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 111 (1998) (Breyer, J., concurring). The party invoking federal jurisdiction has the burden of proof to satisfy the constitutional requirements of Article III standing. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990) (holding that the burden is on the party seeking to exercise jurisdiction to clearly allege facts sufficient to establish jurisdiction).

"A patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281; *see also* 35 U.S.C. § 100(d) ("The word 'patentee' includes not only the patentee to whom the patent was issued but also the successors in title to the patentee."); *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2003) ("[T]his court has determined that in order to assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent *at the inception of the lawsuit*.") (emphasis in original).

---

Biotouch System; iPhone Biodetector Smartphone; Navy Marine Corps Intranet; FLIR identiFINDER R300; AOptix Stratus MX Peripheral; MultiRae Pro Wireless Portable Multi Threat Radiation and Chemical Detector; PositiveID's M-BAND; PositiveID's Firefly DX; 1"x2" Detection Device Samsung Galaxy s6 Smartphone; 2"x2" Detection Device Samsung Galaxy s6 Smartphone; NetS2 SmartShield G300 Radiation Detector Samsung Galaxy s6 Smartphone; NetS2 SmartShield G500 Radiation Detector Samsung Galaxy s6 Smartphone; and the Passport Systems Base Control Unit; Oshkosh Defense Autonomous Unmanned Ground Vehicle TerraMax; and the Variable NODE+Oxa. 2/12/16 Am. Compl. at ¶¶ 68–127.

5

The standard set forth by the United States Supreme Court over a century ago in *Waterman v. MacKenzie*, 138 U.S. 252 (1891) still governs:

> There can be no doubt that he is "the party interested, either as patentee, assignee, or grantee," and as such entitled to maintain an action at law to recover damages for an infringement; and it cannot have been the intention of [C]ongress that a suit in equity against an infringer to obtain an injunction and an account of profits, in which the court is authorized to award damages, when necessary to fully compensate the plaintiff, and has the same power to treble the damages as in an action at law, should not be brought by the same person.

*Id.* at 260–61 (internal citations omitted).

The February 12, 2016 Complaint alleges that Plaintiff is the sole owner of the '497, '033, '752, '761, '280, '891, '990, and '189 Patents. 2/12/16 Am. Compl. at ¶¶ 6–7. Therefore, Plaintiff has standing to seek an adjudication of the claims alleged in the February 12, 2016 Amended Complaint.

### B.   Jurisdiction.

The United States Court of Federal Claims has jurisdiction to adjudicate claims alleging,

> [that] an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same . . . [seeking] recovery of . . . reasonable and entire compensation for such use and manufacture. . . . [T]he use or manufacture of [a patented] invention by a contractor, a subcontractor, or any person, firm, or corporation *for the Government* and *with the authorization or consent of the Government*, shall be construed as use or manufacture for the United States.

28 U.S.C. § 1498(a) (emphasis added).

Infringing activity is "for the Government" under section 1498(a) if it is "for the benefit of the Government." *Advanced Software Design Corp. v. Federal Reserve Bank of St. Louis*, 583 F.3d 1371, 1378 (Fed. Cir. 2009); *see also Madey v. Duke University*, 413 F. Supp. 2d 601, 607 (M.D.N.C. 2006) ("A use is 'for the Government' if it is 'in furtherance and fulfillment of a stated Government policy' which serves the Government's interests and which is 'for the Government's benefit.'" (quoting *Riles v. Amerada Hess, Corp.*, 999 F. Supp. 938, 940 (S.D. Tex. 1998)). In *Hughes Aircraft Co. v. United States*, 534 F.2d 889 (1976), for example, the court held that a satellite program to advance the military defense and security of the United States was "for the Government." *Id.* at 898.

Moreover, "authorization or consent of the Government," does not need to be expressly stated. *See TVI Energy Corp. v. Blane*, 806 F.2d 1057, 1060 (Fed. Cir. 1986) ("[a]uthorization or consent by the Government can be express . . . [or] [i]n proper circumstances, Government

authorization can be implied."). Indeed, "authorization or consent . . . may be given in many ways other than by . . . direct form of communication—e.g., by contracting officer instructions, [or] by specifications . . . which impliedly sanction and necessitate infringement[.]" *Hughes Aircraft Co*, 534 F.2d at 901.

The February 12, 2016 Amended Complaint alleges that various nongovernment entities, including a number of corporations and public research universities, infringed the '497, '033, '752, '761, '280, '891, '990, and '189 Patents. Whether the court has jurisdiction over those claims is the subject of this Memorandum Opinion And Order.

### C. Standard Of Review For *Pro Se* Litigants.

*Pro se* plaintiffs' pleadings are held to a less stringent standard than those of litigants represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers"). The United States Court of Federal Claims traditionally examines the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 412 F.2d 1285, 1292 (Ct. Cl. 1969). Nevertheless, while the court may excuse ambiguities in a *pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995). ("The fact that [the plaintiff] acted *pro se* in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be.").

A *pro se* plaintiff, however, is not excused from his burden of proving, by a preponderance of the evidence, that the court possesses jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) ("[The plaintiff] must allege in his pleading the facts essential to show jurisdiction."); *see also Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ([The *pro se* plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence."). The plaintiff cannot rely solely on allegations in the complaint, but must bring forth relevant, adequate proof to establish jurisdiction. *See Reynolds*, 846 F.3d at 748 ("[I]t was incumbent upon [the *pro se* plaintiff] to come forward with evidence establishing the court's jurisdiction.").

### D. Standard Of Review For A Motion To Dismiss, Pursuant To RCFC 12(b)(1).

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); see also RCFC 12(b)(1) (allowing a party to assert, by motion, "lack of subject-matter jurisdiction"). When considering a motion to dismiss for lack of subject-matter jurisdiction, the court must take the facts alleged in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). The court may consider evidence beyond the pleadings, however, when the motion to dismiss challenges the jurisdictional facts alleged in the complaint. *See Moyer v. U.S.*, 190 F.3d 1314, 1318 (Fed. Cir. 1999). If the court determines that it does not have subject-matter jurisdiction, the court must dismiss the complaint. *See* RCFC 12(b)(1).

7

### E. Standard of Review For Motion To Dismiss, Pursuant To RCFC 12(b)(6).

A claim is subject to dismissal under RCFC 12(b)(6), if it does not provide a basis for the court to grant relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) ("[A well-pleaded complaint] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (internal citations omitted)); *see also Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed.Cir.2002) ("A motion to dismiss . . . for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy.").

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Twombly*, 550 U.S. at 570). The allegations contained in a complaint also must indicate to the court that there is "more than a sheer possibility that a defendant has acted unlawfully. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* To determine whether a complaint states a plausible claim for relief, a court must engage in a context-specific analysis and "draw on its judicial experience and common sense." *Id.* at 678–79. The court, however, must construe the allegations of the complaint in the light most favorable to the plaintiff. *See Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir.1995).

## IV. DISCUSSION.

### A. The Government's June 24, 2016 Motion To Dismiss The February 12, 2016 Amended Complaint's M-Lock And HPEMS Claims, Pursuant To RCFC 12(b)(6).

#### 1. The Government's Argument.

The Government argues that, under section 1498(a), a patent owner can sue the United States for patent infringement only if the United States, a contractor, a subcontractor, a person, or a corporation uses or manufactures the patented invention (1) for the Government and (2) with the authorization or consent of the Government. Gov't Mot. at 3. The February 12, 2016 Amended Complaint alleges that iControl, Inc. ("iControl"), a Government contractor, used and manufactured a device called M-Lock that infringed Plaintiff's '752 and '990 Patents. Gov't Mot. at 3. The Amended Complaint, however, fails to allege sufficient facts to establish that the Government was directly involved in the manufacture or use of M-Lock or that the device was manufactured for the benefit of the Government. Gov't Mot. at 4.

Similarly, the February 12, 2016 Amended Complaint alleges that Eureka Aerospace, another Government contractor, used and manufactured a device called the High-Powered Electromagnetic System ("HPEMS") that infringed Plaintiff's '891 Patent. Gov't Mot. at 4. Plaintiff alleges that the United States Air Force ("USAF") issued a request related to HPEMS and that the United States Marines ("Marines") are a potential customer of the device, but otherwise fails to allege any manufacture or use "by or for the Government." Gov't Mot. at 4.

Accordingly, the February 12, 2016 Amended Complaint's M-Lock and HPEMS claims do not assert sufficient facts to entitle Plaintiff to a remedy under section 1498(a). Gov't Mot. at 4. Those claims should therefore be dismissed, pursuant to RCFC 12(b)(6). Gov't Mot. at 4.

### 2. Plaintiff's Response.

Plaintiff argues that the Government's manufacture or use of an infringing device generally results from procurement contracts. Pl. Resp. at 6. Moreover, when purchasing goods and services from a contractor, the Government seeks to acquire the best product without delay and "will not refuse to award a contract on the grounds that the prospective contractor may infringe a patent." Pl. Resp. at 6 (quoting 48 C.F.R. 27.102(b)). Plaintiff does not explicitly apply these rules to the facts alleged in the February 12, 2016 Amended Complaint. But, his argument appears to be that the existence of a contract between the Government and iControl and Eureka Aerospace for the development of infringing devices supports a reasonable inference that the manufacture and use of the devices was "for the Government" and "with the authorization and consent of the Government." 28 U.S.C. § 1498(a).

### 3. The Government's Reply.

The Government replies that Plaintiff did not address "[the Amended Complaint's] failure to state with particularity a cause of action for which relief can be granted relating to the M-Lock Device or the [HPEMS]." Gov't Reply at 2.

### 4. The Court's Resolution.

#### a. The Government's June 24, 2016 Motion To Dismiss The February 12, 2016 Amended Complaint's M-Lock Claims, Pursuant To RCFC 12(b)(6), Is Denied.

The Government argues that the M-Lock claims should be dismissed, pursuant to RCFC 12(b)(6), because the February 12, 2016 Amended Complaint does not allege that M-Lock was manufactured for the benefit of the Government. Gov't Mot. at 4. The court disagrees.

Viewed in the light most favorable to Plaintiff, the February 12, 2016 Amended Complaint alleges sufficient facts to raise a plausible right of relief under section 1498(a). *See Iqbal*, 556 U.S. at 677. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The February 12, 2016 Amended Complaint alleges that DHS, a federal agency, contracted with iControl "for the development[,] commercialization [and purchase] of . . . M-Lock," an automated locking device that contains "a movement sensor, a temperature sensor, a humidity sensor, an infrared sensor, a radioactivity detection sensor, an acoustic sensor, [and/or] a chemical detection sensor." 2/12/2016 Am. Compl. ¶¶ 74–75. The February 12, 2016 Amended Complaint alleges that M-Lock infringes several claims of Plaintiff's '752 and '990 Patents, disclosing inventions that that automatically detect chemical, biological, and radiological agents so that terrorist activity can be prevented. *See* 2/12/16 Am. Compl. Ex. D at 16; *see also* 2/12/16 Am. Compl. Ex. H at 17. And the February 12, 2016 Amended Complaint alleges that the

infringing device is being used and manufactured without license or legal right. 2/12/2016 Am. Compl. ¶ 75.

Based on the alleged facts, the court can reasonably infer that iControl is a government contractor and that the manufacture and use of M-Lock was "for the benefit of [DHS]." *See Advanced Software Design Corp.*, 583 F.3d at 1378. In light of the allegation that the inventions disclosed in patents '752 and '990 were designed to prevent terrorist activity, it is plausible that iControl manufactured an infringing device for the benefit of DHS to promote national security. *See, e.g., Hughes Aircraft Co.*, 534 F.2d at 898 (finding that the government's participation in a satellite program was "for the Government," because the program was vital to the military defense and security of the United States). Moreover, under section 1498(a), "Government authorization or consent" can be implied by circumstances. *See TVI Energy Corp.*, 806 F.2d at 1060.

In this case, the February 12, 2016 Amended Complaint alleges that DHS contracted with iControl to develop and commercialize M-Lock. This contractual relationship supports a reasonable inference that the Government authorized the manufacture and use of the infringing device.

> **b. The Government's June 24, 2016 Motion To Dismiss The February 12, 2016 Amended Complaint's HPEMS Claims, Pursuant To RCFC 12(b)(6), Is Denied.**

The Government also argues that the February 12, 2016 Amended Complaint's HPEMS claims should be dismissed, because they do not allege that Eureka Aerospace manufactured or used the HPEMS "for the Government." Gov't Mot. at 4. Again, the court does not agree with the Government's contention. The February 12, 2016 Amended Complaint alleges that "as a result of [] contracts with [USAF] . . . for the development and commercialization of the Eureka Aerospace HPEMS, the United States has used, authorized the use, and manufactured, without license or legal right, to Plaintiff's inventions [disclosed in patent '891]." 2/12/16 Am. Compl. ¶ 87. The HPEMS is a device that shoots an electromagnetic pulse so that vehicles can be disabled, without using firearms. *See* 2/12/16 Am. Compl. ¶ 86.

In light of these allegations, the court can reasonably infer that Eureka Aerospace's manufacture and use of the HPEMS advances the military defense and security of the United States and is thus "for the benefit of the Government." *See, e.g., Hughes Aircraft Co.*, 534 F.2d at 898. Moreover, construed in the light most favorable to Plaintiff, the February 12, 2016 Amended Complaint alleges that USAF contracted with Eureka Aerospace to develop and commercialize the HPEMS—sufficient facts to support a reasonable inference that USAF implicitly authorized the manufacture and use of the infringing device. *See TVI Energy Corp.*, 806 F.2d at 1060.[5]

---

[5] While the February 12, 2016 Amended Complaint does not clearly state whether USAF issued a solicitation for the HPEMS or awarded Eureka Aerospace a contract to develop that device, the court must interpret a complaint in the light most favorable to the plaintiff, when ruling on a motion to dismiss, pursuant to 12(b)(6). *See Henke*, 60 F.3d at 797. Therefore, the court reads the February 12, 2016 Amended Complaint to allege that the Government awarded Eureka Aerospace a contract to develop and commercialize the HPEMS.

10

For these reasons, the court denies the Government June 24, 2016 Motion To Dismiss the February 12, 2016 Amended Complaint's M-Lock and HPEMS claims, pursuant to RCFC 12(b)(6).

**B.    The Government's June 24, 2016 Motion To Dismiss The February 12, 2016 Amended Complaint's National Science Foundation Claims, Pursuant To RCFC 12(b)(1) and 12(b)(6).**

### 1.    The Government's Argument.

The Government contends that, under section 1498(a), "merely funding an activity does not establish the Government's authorization and consent [to manufacture or use an infringing device]." Gov't Mot. at 5. The February 12, 2016 Amended Complaint alleges that the Government funded the development of multiple infringing devices through a series of NSF grants ("NSF claims"), but does not allege any other facts to establish the Government's authorization or consent to the manufacture or use of those devices.[6] Gov't Mot. at 5. Moreover, the February 12, 2016 Amended Complaint does not allege that the NSF-funded devices were used or manufactured "by or for the Government." Gov't Mot. at 5. Therefore, the February 12, 2016 Amended Complaint's NSF claims should be dismissed for failure to state a claim upon which relief can be granted. Gov't Mot. at 5.

The Government also argues—without additional explanation—that the court should dismiss the NSF claims for lack of subject matter jurisdiction. Gov't Mot. at 5.

### 2.    Plaintiff's Response.

Plaintiff responds that "[g]rant related agreements [are] contracts within Tucker Act jurisdiction when all the requisite elements of a contract were present, including a government representative with actual authority to bind the government in contract." Pl. Resp. at 7 (quoting *Pennsylvania Dep't of Pub. Welfare v. United States*, 48 Fed. Cl. 785, 790 (2001) ("[g]rant related agreements have been held to be contracts within Tucker Act jurisdiction when all the requisite elements of a contract were present, including a government representative with actual authority to bind the government in contract.")). The February 12, 2016 Amended Complaint's NSF claims facially involve grant related agreements. Pl. Resp. at 8–9. Therefore, the United States Court of Federal Claims has jurisdiction, under the Tucker Act, to adjudicate those claims. Pl. Resp. at 8.

Plaintiff also argues that the Government's award of NSF grants for the development of infringing devices supports a reasonable inference that the manufacture and use of those devices was "for the Government" and "with the authorization and consent of the Government." Pl. Resp. at 10–11.

---

[6] The accused devices are: the Smartphone Microscope, Gov't Mot. at 5; Biophone, Gov't Mot. at 6; Smartphone Biosensor "Cradle", Gov't Mot. at 6; iPhone Biodetector Smartphone, Gov't Mot. at 7; Pathtracker, Gov't Mot. at 7; COINS, Gov't Mot. at 8; and Smartphone-Based Rapid Diagnostic Test Devices, Gov't Mot. at 8.

### 3. The Government's Reply.

The Government concedes that NSF Research Grant Awards may be treated as contracts to establish jurisdiction under the Tucker Act, but argues that the existence of a contract is not sufficient to establish liability under section 1498(a). Gov't Reply at 2. Section 1498(a) allows a patent holder to sue the Government only if the infringing manufacture or use of the relevant invention was "for the Government" and "with the authorization or consent of the Government." Some courts have found that the terms of a NSF grant can satisfy section 1498(a). Gov't Reply at 2 (citing *McMullen Assoc., Inc. v. State Bd. Of Higher Ed.*, 268 F. Supp. 735 (D. Or. 1967)). The grants at issue in those cases, however, reserved property rights in the infringing device to the Government. Gov't Reply at 2. The February 12, 2016 Amended Complaint does not allege that the Government retained a property right in any of the accused devices and fails to allege any other facts that could plausibly establish that the manufacture or use of the patented invention was "for the Government" and "with the authorization or consent of the Government." Gov't Reply at 2–3.

### 4. The Court's Resolution.

#### a. The June 24, 2016 Motion To Dismiss The February 12, 2016 Amended Complaint's National Science Foundation Claims, Pursuant To RCFC 12(b)(1), Is Denied.

Under the Tucker Act, the United States Court of Federal Claims has jurisdiction to adjudicate a claim if the statute, regulation, or constitutional provision that is the basis for that claim "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained," *United States v. Mitchell*, 463 U.S. 206, 217 (1983), and the plaintiff is "within the class of plaintiffs entitled to recover under the statute if the elements of [the] cause of action are established," *Greenlee County, Arizona v. United States*, 487 F.3d 871, 876 (Fed. Cir. 2007). "There is no further jurisdictional requirement that plaintiff make [] additional nonfrivolous allegation[s] that [he] is entitled to relief under the relevant money-mandating source." *Jan's Helicopter Serv., Inc. v. Federal Aviation Agency*, 525 F.3d 1299, 1307 (Fed. Cir. 2008). Instead, "the consequence of a ruling by the court . . . that plaintiff's case does not fit within the scope of the [money-mandating] source . . . is simply [that] plaintiff loses on the merits for failing to state a claim on which relief can be granted." *Fisher v. United States*, 402 F.3d 1167, 1175–76 (Fed. Cir. 2005).

Here, the February 12, 2016 Amended Complaint's NSF claims are based on section 1498(a), a statute that is money-mandating on its face. *See* 28 U.S.C. § 1498(a) ("Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, *the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture*.") (emphasis added). Furthermore, Plaintiff is the owner of the United States patents asserted in this case and is therefore entitled to recover under section 1498(a). *See* 28 U.S.C. § 1498(a).

Accordingly, the court has jurisdiction to adjudicate the February 12, 2016 Amended Complaint's NSF claims. The Government's June 24, 2016 Motion To Dismiss, pursuant to 12(b)(1), is denied.

### b. The June 24, 2016 Motion To Dismiss The February 12, 2016 Amended Complaint's National Science Foundation Claims, Pursuant To RCFC 12(b)(6), Is Denied.

The February 12, 2016 Amended Complaint's NSF claims allege sufficient facts to support a reasonable inference that the manufacture and use of the accused devices was "for the Government." *See Iqbal*, 556 U.S. at 678. The NSF claims allege that the Government awarded research grants to develop portable devices that can: (1) identify dangerous chemical, radiological, and bacterial agents; and (2) track the spread of disease.[7] Based on the alleged facts, it is plausible that the accused devices were used to further the military defense, national security, and public health interests of the United States: policies that the Government has a fundamental interest in advancing. Accordingly, the court can reasonably infer that the use of the NSF-funded devices was "for the Government." *See, e.g., Hughes Aircraft Co.*, 534 F.2d at 898 (finding that the government's participation in a satellite program was "for the Government," because the program was vital to the military defense and security of the United States); *see also Madey*, 413 F. Supp. 2d at 607 (M.D.N.C. 2006) (explaining that a use is "for the Government" if it is in furtherance and fulfillment of a stated Government policy and for the Government's benefit).

The February 12, 2016 Amended Complaint's NSF claims also allege sufficient facts to plausibly establish that the use of the accused devices was "with the authorization or consent of the Government." Authorization or consent can be implied from the circumstances—"e.g., by contracting officer instructions, [or] specifications or drawings which impliedly sanction and necessitate infringement." *Hughes Aircraft Co.*, 534 F.2d at 901. For example, in *TVI Energy Corp.*, the United States Court of Appeals for the Federal Circuit held that the Government impliedly sanctioned the use of a patented invention when it issued a solicitation that required bidders to submit for inspection, and perform live demonstrations of, the accused device. *See TVI Energy Corp.*, 806 F.2d at 1060.

In this case, the relevant NSF grants anticipate that the awardees will develop and test the devices proposed in their applications. *See, e.g.*, NSF Award No. 1444240 ("Annual and Final

---

[7] The relevant NSF grants are being used to develop: "a portable smartphone attachment that can be used to perform sophisticated field testing to detect viruses and bacteria," 2/12/16 Am. Compl. ¶78; "[a device] that derives biological signals from your smartphone's accelerometer . . . [and] [t]his information is useful to base medical diagnoses in real-life conditions and to help track chronic health conditions and effects of therapeutic interventions," 2/12/16 Am. Compl. ¶80; "a cradle and app for the iPhone to make a handheld biosensor that uses the phone's own camera and processing power to detect any kind of biological molecules or cells," 2/12/16 Am. Compl. ¶92; a handheld instrument to help contain the spread of Ebola, HIV, Tuberculosis, and Malaria, 2/12/16 Am. Compl. ¶102; "[a portable device for] real-time detection of explosives, toxicants, and radiation," 2/12/16 Am. Compl. ¶122; "highly sensitive rapid medical diagnostic tests," 2/12/16 Am. Compl. ¶126.

project reports, as required in the NSF Grant Conditions, should document all efforts and outcomes, whether or not they are successful."). Government funding of research that will lead to the development and testing of an accused device supports a reasonable inference that the Government impliedly sanctioned infringing activity.

## V.   CONCLUSION.

For the reasons discussed herein, the Government's June 24, 2016 Motion To Dismiss Certain Devices, pursuant to RCFC 12(b)(1) and 12(b)(6), is denied.

Plaintiff, however, is cautioned that the court's ruling today is based on the standard of review on sufficiency of the pleading alone and is not to be construed as a ruling on the substantive merits of the patent infringement claims alleged in the February 12, 2016 Amended Complaint. The court will convene a telephone status conference in the next few days to discuss a schedule to move this case towards adjudication.

**IT IS SO ORDERED.**

_____
**SUSAN G. BRADEN**
**Judge**