# In the United States Court of Federal Claims

No. 13-307C
(Filed: November 10, 2021)

* * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| LARRY GOLDEN, | |
| *Plaintiff,* | Patent infringement; 28 U.S.C. § 1498(a); RCFC Patent Rule 4; Preliminary infringement contentions; Dismissal. |
| v. | |
| THE UNITED STATES, | |
| *Defendant.* | |

* * * * * * * * * * * * * * * * * * *

*Larry Golden*, pro se.

*Grant D. Johnson*, Trial Attorney, United States Department of Justice, Civil Division, Commercial Litigation Branch, with whom were *Brian M. Boynton*, Acting Assistant Attorney General, and *Gary L. Hausken*, Director.

## OPINION

Plaintiff, Larry Golden, owns a family of patents concerning a device for detecting chemical, radiological, and biological hazards. He alleges generally that the United States, through the Department of Homeland Security, has caused cell phone manufacturers to produce devices that infringe on one or more of his patents. Eight years on, however, the case has not proceeded past the pleadings stage; the most recent pleading being the sixth amended complaint. After allowing leave to file that complaint, we warned plaintiff that it would be his last, and we set a schedule to proceed to claim construction. The first step was to have been the filing of preliminary infringement contentions. Plaintiff's contentions, however, were "woefully deficient" and were struck by our order of July 29, 2021. *Golden v. United States*, 2021 WL 3238860, at *7 (Fed. Cl. July 29, 2021). We declined, however, to grant defendant's request that we dismiss the case and thus directed plaintiff to make another attempt at preliminary contentions. We cautioned, however, that it would be his final chance. *Id.*

Plaintiff timely submitted two batches of documents on August 19 and 23, 2021.  Those were docketed, after an order clarifying their status for the clerk's office, on September 20, 2021.   Defendant has since again moved to strike the contentions and to dismiss the complaint.  Because we agree that the infringement contentions fail to meet the requirements of local patent rule 4 and improperly attempt to enlarge the scope of this case, we grant the motion to strike and to dismiss.

BACKGROUND

The Sixth Amended Complaint (ECF No. 195) puts forth a general theory that the Department of Homeland Security ("DHS") solicited proposals for the development of devices, such as plaintiff's, through its "Cell-All" initiative in 2007 and the following years.  The focus of this program was cell phones.  Plaintiff avers that he responded to the solicitation along with cell phone manufacturers such as Apple and Samsung.  Mr. Golden alleges that DHS continues to fund development of these devices to this day.  Through these efforts, according to plaintiff, the government has caused other manufacturers to develop, produce, and commercialize devices, such as cell phones, that infringe on plaintiff's patents.

Plaintiff describes his invention as a Communication, Monitoring, Detecting, and Controlling Device, known as a "CMDC." Sixth Am. Compl. ¶ 6. Each word corresponds to a feature of his invention.  "Communication," such as cellular or WiFi; "monitoring," such as a screen for viewing alerts from the device; "detecting" via a "chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor"; and "communication" is found in the fact that the communication device is part of a system that can communicate with other devices.  *Id.*  Also central to his invention is the presence of a central processing unit ("CPU") for making these constituent elements function together, or as he describes it in the complaint, an "engine of logic, as with the brain."  *Id.*  The CMDC device also features a locking, unlocking and disabling function via sent or received signals.  This device is claimed by the five patents still at issue: the '497, '752, '189, '439 and '287 patents.[1]

Plaintiff's earlier, defective infringement contentions accused 28

---

[1] These refer to U.S. Patent Numbers 7,385,497; 8,106,752; 9,096,189; 9,589,439; and 10,163,287.

specific devices, 10 manufactured by Apple, nine by Samsung, and nine by LG. The documents submitted by plaintiff on August 19, 2021, again identify 10 Apple products and nine from Samsung. Voluminous claim charts for these products are included. The document received on August 23, 2021, however, states that 30 devices from Apple, 27 from Samsung, and 27 from LG are at issue. In addition to the allegations against LG, these contentions add smart watches and chipsets and CPUs used by Apple in a host of products it has offered and currently offers. The same is true for Samsung. Chipsets and CPUs used in LG products are also included. Plaintiff did not attach a claim chart that separately identifies how these additional devices are alleged to infringe nor any claim chart for any products used or offered by LG. The latter, specific contentions regarding LG, along with a claim chart, were received by the clerk's office on September 21, 2021, along with a "Notice of Missing Documents" in which plaintiff states that the docket is missing his contentions regarding LG. He points out that the appendix to defendant's motion to strike contains the contentions aimed at LG. The notice does not explain how or why those documents are missing nor does it seek leave to file them out of time. The notice and attached contentions are thus directed to be returned to plaintiff unfiled.[2]

Earlier this year, we struck plaintiff's first attempt at preliminary infringement contentions for two principal reasons. The first was that plaintiff's submittals, including lengthy charts, did not identify a specific component in the accused devices that was alleged to be a sensor. *Golden*, 2021 WL 3238860 at *4-6. It was insufficient that plaintiff's contentions alleged the general ability of the devices to be modified to operate as plaintiff's device does. *Id.* at 6.

The second basis for rejecting plaintiff's earlier attempt at infringement contentions was that they did not identify a locking feature as claimed by plaintiff's patents. *Id.* at 6-7. Plaintiff's citation to the doctrine of equivalents was unavailing because the charts offered did not assert with any detail how the accused devices performed substantially the same functions in substantially the same way. *Id.* at 7. Defendant again raises these issues regarding plaintiff's revised preliminary contentions. As explained

---

[2] We note, however, that the LG contentions were served on defendant and treated in the government's motion. Although we decline to add them to record *sua sponte*, the holdings below would apply to these contentions as well. Thus, even if we considered them, the outcome would not change.

below, plaintiff's corrected contentions fail for these same reasons.

Plaintiff responded to defendant's motion to strike and asked the court to grant summary judgment in his favor because of an alleged abuse of process on defendant's part for having repeated its same procedural arguments. Those motions are fully briefed.[3] Oral argument is unnecessary.

DISCUSSION

The overarching issue, once again, is whether plaintiff's infringement contentions comply with the court's patent rules, specifically Patent Rule 4, which lists what must be present in preliminary infringement contentions. In pertinent part:

(a) the claim in each product, process, or method of each patent at issue that is allegedly infringed by each opposing party;

(b) for each asserted claim, each product, process, or method that allegedly infringes the identified claim. This identification must include the name and model number, if known, of the accused product, process, or method;

(c) a chart identifying where each element of each asserted claim is found within each accused product, process, or method, including the name and model number, if known;

(d) whether each element of each identified claim is alleged to be literally present or present under the doctrine of equivalents in the accused product, process, or method; and

---

[3] After the conclusion of briefing on the parties' motions, defendant filed a notice regarding the outcome of related proceedings that Mr. Golden brought in district court against the cell phone manufacturers. The complaint was dismissed as frivolous. *Golden v. Apple Inc.*, No. 6:20-cv-04353 (D. S.C. Nov. 3, 2021) (slip op. dismissing case). Mr. Golden attempted to lodge his objections regarding that decision in documents received by our clerk's office on November 4 and 8, 2021. Those documents were not docketed by the clerk's office because there is no provision in the court's rules allowing them to be filed. Accordingly, we direct the clerk's office to return them to plaintiff unfiled.

Rules of the United States Court of Federal Claims ("RCFC"), Appendix J, Patent Rule 4(a)-(d).

Preliminary infringement contentions serve, and must be specific enough, to put the opposing party and the court on notice of plaintiff's position as to "where each element of each infringed claim is found within the accused device." *Iris Corp. Berhad v. United States*, 84 Fed. Cl. 12, 16 (2008) (citing *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1362-63 (Fed. Cir. 2006)). In a patent case, a specialized and technical area of law, the preliminary contentions supplement the notice pleading required of the complaint to focus the issues for discovery and trial. *Iris Corp. Berhad. v. United States*, 2019 WL 2317143, at *2 (Fed. Cl. May 8, 2019).

Defendant argues that Mr. Golden's corrected contentions are deficient because they again fail to specifically identify the hazardous material sensors in any of the accused products and again do not identify in any of the accused devices how the unlocking function is performed in response to the detection of a hazard. Defendant also argues that the late-included CPUs and chipsets are an improper expansion of the case and, in any event, have no corresponding claim chart to identify where in those devices the patent is infringed. We agree on each point and begin with the latter.

## I. CPUs And Chipsets

Plaintiff's August 23 submission improperly attempts to expand the scope of the case to include a host of new devices, most which appear to be only components in other products. This appears in tune with plaintiff's argument that a CPU is the infringing component because it can be programmed to perform the functions or direct other components to perform the functions claimed by his patents. Putting the propriety of that aside for the moment, the inclusion of these new chips as independent infringing devices is an improper attempt to again enlarge and materially change the infringement pled in the final amended complaint. We warned that the pleading stage had come to an end. *See* Order of February 21, 2021 at 7 (ECF No. 215) ("Plaintiff may file no further amended complaints."). In any event, these contentions are not supported by a claim chart and thus violate RCFC Patent Rule 4(c). Accordingly, plaintiff's August 23 submission is struck for failure to conform to the court's rules and failure to follow a court order.

## II. Sensors

Defendant argues that plaintiff's corrected preliminary infringement contentions, like the first attempt, do not identify any sensing or detecting component in the accused devices.  Instead, plaintiff's contentions merely point to the CPU, recite information from the patents' specifications regarding potential embodiments of his invention, or contain other irrelevant information.[4]

Plaintiff's response argues generally that preliminary infringement contentions need not provide every piece of evidence to support plaintiff's case since they are produced prior to discovery; a rule of reasonableness must be applied.  Plaintiff then provides examples from his LG contentions to show how has met the specificity required of preliminary contentions. Plaintiff merely quotes *in haec verba* from his LG contentions for the sensing component of the first claim of the '497 patent.    He then quotes from the specifications of all five patents regarding the use of the CPU in his invention.  Although not explicitly argued, we understand this to be an argument that the ability of the CPU in the accused devices to instruct the phones to perform functions, such as running a sensor, is sufficient to infringe on his device, given the central importance of the CPU to both his CMDC and the accused phones by LG, Apple, and Samsung.  He also discusses documents from Qualcomm, a mobile phone chip producer, apparently submitted to DHS in response to the Cell-All solicitation.  Lastly, plaintiff reiterates that Claim 1 of the '497 patent is infringed by the accused products' CPUs, chipsets, and biometric locking disablers (fingerprint reading).[5]

Defendant is correct that the corrected contentions and claim charts are well short of the requirement of Patent Rule 4(c) in that they do not identify any sensing or detecting component.  We will use the Apple claim chart as illustrative of the problem.

---

[4]   Also included in plaintiff's claim charts corresponding to the sensor limitations is information regarding smart watches generally, the Cell-All initiative's aims, and an *Inter Partes Review* decision concerning a patent not at issue.

[5]  The document goes on to discuss defendant's preliminary invalidity contentions submitted in response to plaintiff's earlier-struck infringement contentions.

A.  '497, '752, and '439 Patents' Sensor Limitation

Plaintiff's chart for Apple, for the '497 patent, begins with independent claim 1, which claims "a multi sensor detection and lock disabling system for monitoring products . . . comprising: . . . . a plurality of interchangeable detectors for detecting the chemical, biological and radiological agents and compounds and capable of being disposed within the detector case . . . ."  Apple Claim Chart at 9 (quoting the '497 patent, claim 1).  In the column for the accused devices, plaintiff writes that the government and Apple infringe this detecting component under the doctrine of equivalents through the "NODE+" platform "developed with NASA for the DHS Cell-All project."  *Id.*  The chart states that NODE+ is a small cylindrical device that "transmit[s] data from sensors to smartphones or other smart device."  *Id.*  This then is used with "off-the-shelf sensors" to create an "interchangeable module" that could be "snapped onto either end of smartphone or other device."  *Id.*  It is apparent that the NODE+ and the "off-the-shelf sensor" are both separate from and extraneous to the accused devices.  The same language is used by plaintiff for the sensor or detector limitation in his '752 and '439 patents.  *Id.*  at 16 (Claim 10 of the '752 patent); 97 (Claim 13 of the '439 patent); 106 (Claim 14 of the '439 patent);173 (Claim 22 of the '439 patent); 187 (Claim 23 of the '439 patent).  This language is further repeated for other products in the Apple charts.

General Systems Inc. and the NODE+ device are new to the suit.  Thus, as defendant points out, they are an improper expansion of the case beyond the ambit of the final amended complaint.  They could therefore be ignored for this reason alone.  More fundamentally, however, they illustrate the painfully obvious problem with plaintiff's case: he has not, and at this point in the litigation we must presume cannot, credibly allege what component of the accused Apple, or Samsung for that matter, devices infringe literally, or is even equivalent to, hazard detectors or sensors claimed in his patents.[6]  NODE+ and the additional sensor needed to make it work are not components of the phones and smart watches accused by plaintiff.  This is clarified further in plaintiff's reply brief where he explains that he has tried to demonstrate to defendant that "when the sensing and detection means is placed in, on, upon, or adjacent the cell phone, the integration forms a 'sensor'."  Pl.'s Reply at 5.  He goes on to include pictures of examples, which show the additional sensors added or affixed to the phones.  They are

---

[6] The same language is used in plaintiff's contentions regarding Samsung, and for that matter, LG.  *See, e.g.*, Samsung Claim Chart at 9, 16 *et seq.*

not native to the devices as manufactured by Apple or Samsung.  Unable to find a sensing component in the accused devices, Mr. Golden did as he has done for many years now, simply brought in another party and device. Unexplained is how they relate either to the products ostensibly accused by the complaint or the overarching mystery present in all of plaintiff's pleadings—how the government is on the hook for the private parties' products.  The citation to the NODE+ sensors of General Systems Inc. does not meet plaintiff's burden to "identify[] where each element of each asserted claim is found within each accused product."  RCFC Patent Rule 4(c).

    B.   The '287 Patent's Sensor Limitations

       Like the three patents discussed above, the '287 patent contains three claims which teach that the CMDC device includes one or more sensors or detectors for hazardous materials.  Claim 4 of the '287 states that the device is comprised of, among other things, "at least one or more detectors . . . of a chemical, biological, radiological, or explosive agents."  Apple Claim Chart at 198 (quoting '287 patent, claim 4).  Claims 5 and 6 likewise teach at least one hazard detector.  *Id.* at 208, 218.  The same is repeated for other Apple devices and the Samsung devices.  The claim chart for this element of the invention identifies, ostensibly under the doctrine of equivalents, the CPUs of these Apple devices (phones and smart watches) as the sensors.  Plaintiff explains that the CPU is connected to the "field devices" such as sensors to "provide[] the interface between the CPU and the information providers (inputs)" and then performs whatever function the phone has been programmed to perform in response to those inputs.  *Id.* at 198, 208, 218.  It is apparent from these charts and from plaintiff's response to the motion to strike that he asserts that the CPUs themselves satisfy the sensor limitation of his patents.  We disagree.

       Plaintiff's own chosen language belies his point.  He states that the CPU receives inputs from the "field devices," which include any sensors, and then executes the commands stored in memory to respond to these inputs. His patents, however, claim a specific type of field device, *i.e.* hazardous material sensors, as an independent component of his invention.  Thus, under Patent Rule 4, he must identify where in the Apple and Samsung devices such a sensor is present.  Instead, plaintiff asserts that the phone's brain, its CPU, ought to count as the sensor.  This, despite his own explanation in the claim charts that the CPU communicates with separate input devices (including sensors).  Even under the doctrine of equivalents, the CPU cannot be both the thing that responds to the inputs—the brain—and the extremities

that deliver the inputs—in plaintiff's analogy, sensory nerves.  Plaintiff's preliminary infringement contentions fail to identify a sensor or detector in the accused products as claimed by his patents.

### C.  The '189 Patent

Like his other patents, plaintiff's '189 patent contains two claim limitations that include sensors for hazardous materials.  These are found in independent claims 7 and 8.  Apple Claim Chart at 68, 77.  Plaintiff's claim charts make no attempt whatsoever to link these limitations to any component of the accused devices.  The charts instead quote from an *Inter Partes Review* at the Patent Office of a different patent and from the '189 specifications regarding sensors.  This does not pass muster under the rules as it wholly fails to link these limitations to the accused devices.  For this reason, the corrected contentions must be struck.

## III. Locking Function

Defendant also argues that the claim charts fail to identify in the accused devices any locking mechanism or function as claimed by the five patents.  This same problem betrayed plaintiff's first attempt at infringement contentions, and it does so again.  Ignoring what was alleged in his claim charts, plaintiff responds that he has identified the CPUs of the accused products and their "fingerprint biometric lock disablers" which are together, in his opinion, the equivalent of the lock disabling systems claimed by his patents.  Pl.'s Resp. and Cross-Mot. at 20.  As discussed below, however, his claim charts do not identify any biometric fingerprint sensors or functions in the accused devices as the claimed locking features.  He goes on to state that the locking mechanisms are described in his patents' specifications and thus there is no need for further specificity in the claims.  It is unclear how that last point is responsive to defendant's argument, which has nothing to do with the lack of specificity in the patent itself, but rather asserts that Mr. Golden's claim charts are deficient because they do not identify the locking mechanisms in the accused devices.

### A.  The '189 and '439 Patents

Claim 2 of the '189 patent and claim 14 of the '439 patent teach that the invention is comprised of, among other things, "monitoring equipment [that] is interconnected to a product equipped to received signals from or send signals to the lock disabling mechanism that is able to engage and

disengage or disable the lock disabling mechanism . . . ." Apple Claim Chart at 34, 110, 252, 328, 471, 547 (quoting the '189 and '439 patents). The corresponding box in the accused devices column states that the Apple products are "capable of sending signals to lock and unlock doors" and security systems in buildings and vehicles. *Id.* The same is true for the Samsung devices, and for that matter, the LG devices in plaintiff's charts.

This is again short of what is required by the rules. As we stated before, claiming that a product merely is capable of operating in a manner that infringes is insufficient notice in an infringement contention. *Golden*, 2021 WL 3238860 at *6 (citing *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001)). That a device could do something is not sufficient to identify what component performs the necessary function.[7] Beyond that, what is cited by plaintiff as exemplary of the infringement appears to be an altogether separate feature of smart devices, in essence, that they can be used to remotely lock and unlock other devices present in one's home or vehicle. The limitations claimed in the patents for a locking function claim a capability to lock the device itself or some of its subsystems, such as the sensors, not a device external to the CMDC. Plaintiff's corrected contentions fail to identify where in the accused devices a locking mechanism is present.

B. '497 and '752 Patents

The '497 and '752 patents claim a mechanism for locking the CMDC in response to the detection of hazardous materials, found in claim 1 and claim 10 of those patents respectively. As we stated before, plaintiff's contentions must identify where or how in the accused devices this limitation is found. Plaintiff has again failed to do so.

For claim 1 of the '497 patent, plaintiff's contention chart accuses the

---

[7] To be fair, the patents also separately claim a locking and unlocking mechanism which responds to unauthorized attempts to access the device by locking it. For these limitations, the claim charts recite the patents' specifications and apparently quote an explanation from Apple regarding its Apple ID locking functions and, for Samsung, verbiage from a Samsung website regarding a similar security feature. *See, e.g.*, Apple Claim Chart at 33; Samsung Claim Chart at 10. Like the other locking feature in the claims, plaintiff has failed to point to anything specific in the accused devices which might literally or equivalently infringe on his design.

Apple products of having internal carbon monoxide sensors which then trigger light or sound alarms to alert the phone or watch user. Emergency services are automatically called if the alarm is not responded to. For Samsung products (and the LG products) a similar carbon monoxide warning feature is highlighted, but this time the sensor is in an external detector which communicates with the Samsung device via a downloaded application to provide a warning to the user. Both examples are a clear misfire as they do not purport to be a locking feature in response to a detected hazard, and, in the case of the Samsung (and LG) devices, both require communication with another, un-accused device. These are clear failures to identify where in the accused devices the locking feature in response to a detected hazard is present.

C. '287 Patent

Claims 4, 5, and 6 of the '287 patent each teach "at least one" locking mechanism that communicates with "at least one" CPU for locking or disabling the device. *E.g.*, Apple Claim Chart at 197, 206, 216 (quoting claims 4, 5, and 6 of the '287 patent). For this mechanism, the claim charts recite the same language regarding the capability of a CPU which plaintiff used for the detectors discussed above. *Id.* The same is true for the Samsung products. *E.g.*, Samsung Claim Chart at 197, 206, 216. An inspection of the LG chart reveals the same.

At best, this contention can be read to argue that the CPUs make the accused smart devices capable of locking. That is insufficient because the capability of a device to be programmed to perform similarly does not identify where or what in the device meets the patent's limitation. Plaintiff's patent clearly claims an independent component part of the CMDC that is a locking mechanism. Such a component is wholly missing from the claim chart. Plaintiff has had two attempts at identifying this feature in the accused devices. Having failed to do so, we assume that he cannot.

III. Other Deficiencies

The remaining limitations of the claim chart are almost entirely deficient as well. Although the two failures identified above are sufficient grounds to strike the new contentions, we agree with defendant that even a cursory examination of the claim charts for the other limitations reveals that they almost universally fail to meet the requirements of Patent Rule 4. Aside from the general claim of the patents that the CMDC includes a CPU, which

is unquestionably present in the devices accused, the rest of the limitations regarding sensors, viewing screens, warning lights, GPS connections, power sources, and communications components (Bluetooth, WiFi, and radio) are absent in the claim chart for each of the accused products. Instead, plaintiff's corrected claim charts merely provide a short explanation of the function of a CPU or a citation to the patent's specifications or to a decision of the Patent Office regarding another related patent.[8]

In a couple of other instances, plaintiff's charts refer to two prototype cell phones produced in 2011 for DHS, but neither of these phones is an accused product, nor were they made by Apple, Samsung, or LG. They cannot serve as the basis for a valid infringement contention for the accused products. In sum, plaintiff's corrected preliminary infringement contentions are irreparably deficient and must be struck.

CONCLUSION

Mr. Golden has had two opportunities to conform his preliminary infringement contentions to the court's rules. These procedural requirements are not merely perfunctory. Patent Rule 4's specificity requirements serve an important function—to narrow and focus the issues and theories that must be pursued during the litigation. It is therefore not a triumph of form over function to dismiss the case for plaintiff's repeated failure to follow the rules in this regard.

Plaintiff has had eight years to come up with a plausible theory of infringement against the United States and the third parties whose products he alleges were made at the behest of the government. Mr. Golden has amended his complaint six times in response to the government's objections to the shortcomings in his pleadings. As we warned earlier, failure to produce a sufficiently detailed claim chart would cause the court to assume that it cannot be done. That has happened. Enough time and resources have been expended by the court and the Department of Justice dealing with these allegations. Because plaintiff has failed to conform his preliminary infringement contentions with Patent Rule 4 and has failed to follow a court order in that regard, the case must be dismissed. Accordingly, the following is ordered:

---

[8] Also included in his claim charts is generalized background regarding the Cell-All initiative, other unaccused devices, and general information about CPUs and smart devices.

1. The clerk's office is directed to return to plaintiff unfiled the materials received on September 21, 2021 (LG contentions) and the documents received on November 4 and November 8, 2021.

2. Defendant's motion to strike and to dismiss (ECF No. 240) is granted pursuant to Rule 41(b).

3. Plaintiff's cross-motion for summary judgment (ECF No. 241) is denied.

4. The Clerk of Court is directed to dismiss the complaint with prejudice and to enter judgment accordingly.

<u>s/Eric G. Bruggink</u>
ERIC G. BRUGGINK
Senior Judge

13